**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **HEATHER BROWN,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-cv-02274-TWT-AJB** |
| **v.** | : | |
| | : | |
| **CREDIT MANAGEMENT, LP,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S**
**<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

In this action, Plaintiff Heather Brown raises claims against Defendant Credit

Management, LP, for violation of the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692 *et seq.*, and Telephone Consumer Protection Act ("TCPA"),

47 U.S.C. § 227 *et seq.* [Doc. 37 (2d Am. Compl.)].  The matter is presently before the

Court on Defendant's and Plaintiff's cross-motions for summary judgment, [Doc. 39

(Def.'s Mot. Summ. J.); Doc. 44 (Pl.'s Mot. Summ. J.)].  For the reasons herein, the

undersigned **RECOMMENDS** to the District Judge that Defendant's motion for

summary judgment, [Doc. 39], be **GRANTED IN PART and DENIED IN PART**,

and that Plaintiff's motion for summary judgment, [Doc. 44], be **DENIED**.

AO 72A
(Rev.8/8
2)

## I.   *Background*[1]

On or about March 24, 2014, Plaintiff opened an account with Comcast for cable services.   (PSUMF ¶ 3).[2]   She lived with her parents, receiving some income in exchange for caring for her father, but she opened the account in her own name. (PSUMF ¶¶ 1, 2, 4).   At the time she opened the Comcast account, Plaintiff provided Comcast with her cellular telephone number ending with -7539.   (PSUMF ¶ 5).

Plaintiff ultimately defaulted on the account, and on May 28, 2014, Comcast placed the account with Defendant Credit Management, LP, for collection. (PSUMF ¶ 14; DSUMF ¶¶ 5, 6).   Defendant's primary business is the collection of past due debts.   (PSUMF ¶ 15).   When Comcast provided the account to Defendant for collection, it also provided Defendant with Plaintiff's cellular telephone number. (DSUMF ¶ 7).

---

[1]   The facts recited in this section are intended to establish the context of the case.   Additional facts will also be recited in the discussion section below.

[2]   Paragraph numbers preceded by "PSUMF" refer to portions of Plaintiff's Corrected Statements of Material Facts To Which There Is No Genuine Issue To Be Tried, [Doc. 59], that Defendant has not disputed, [Doc. 60-1], and paragraph numbers preceded by "DSUMF" refer to portions of Defendant's Statements of Uncontested Material Facts, [Doc. 39-1], that Plaintiff has not disputed, [Doc. 56-1].

2

In furtherance of its attempts to collect the unpaid Comcast account from Plaintiff, Defendant placed four telephone calls to her cellular telephone number. (DSUMF ¶¶ 8, 9). Defendant placed all four of the telephone calls on May 30, 2014. (DSUMF ¶ 9). Plaintiff also placed three calls to Defendant on that date. (DSUMF ¶ 12).

Defendant first called Plaintiff on her cellular telephone at or around 8:33 that morning. (PSUMF ¶ 48). Plaintiff missed the call, and Defendant did not leave a message. (PSUMF ¶ 49; DSUMF ¶ 10).

A few minutes later, Plaintiff called Defendant back. (PSUMF ¶ 50). After she identified herself to a verification agent, she was transferred to a collection agent. (PSUMF ¶ 50). Defendant disclosed that the purpose of the call was to collect a debt. (PSUMF ¶ 51). Defendant noted in its account records that Plaintiff then hung up on the agent. (Deposition of Nelson Wilson ("Wilson Dep."), Exh. 9 [Doc. 55-11 at 11]).[3]

Later that same day, at or around 12:43 p.m., Defendant placed another outbound call to Plaintiff on her cellular telephone. (PSUMF ¶ 57). Plaintiff answered the call. (PSUMF ¶ 57). Defendant's representative identified herself by name and indicated

_____

[3]      While the Court need consider only the materials cited in support of the parties' statements of material facts, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

AO 72A
(Rev.8/8
2)

that she was calling on a recorded line.  (PSUMF ¶ 58).  Defendant again noted in its account records that Plaintiff hung up on the agent.  (Wilson Dep., Exh. 9 [Doc. 55-11 at 11]).

Later that same day, at or around 4:19 p.m., Defendant placed another outbound call to Plaintiff on her cellular telephone.  (PSUMF ¶ 64).  Plaintiff missed the call, and Defendant did not leave a message.  (PSUMF ¶ 65; DSUMF ¶ 10).

Within minutes after the missed call, Plaintiff called Defendant back. (PSUMF ¶ 66).  She identified herself to a verification agent and was transferred to a collection agent.  (PSUMF ¶ 67).  In response to the collection agent's request for payment, Plaintiff stated, "Um, right now, I am unemployed, and I do not have a job to pay anything, and my husband just got locked up, and will not be out for several months."  (Deposition of Heather Brown ("Pl. Dep.") at 41).  She also told the agent that she had "no income whatsoever," that she did not have anyone to pay her bills, that her bills would "get paid when [she got] money to pay them," and that she could not set up a payment arrangement because she had "other things [she had] to deal with before [she could] made any arrangements, period."  (*Id*. at 41-42).  Plaintiff further stated to the agent, "I feel like, just today, I've received, like, ten phone calls, and told everybody the same thing.  So I feel like I'm being harassed," and she said that she

4

would call back when she had money and was able to pay.  (*Id*. at 44).  The call then ended.  (PSUMF ¶ 70).

Later that same day, at or around 6:25 p.m., Defendant placed another outbound call to Plaintiff on her cellular telephone.  (PSUMF ¶ 76).  Plaintiff missed the call, and Defendant did not leave a message.  (PSUMF ¶ 77; DSUMF ¶ 10).

Shortly thereafter, around 6:45 p.m., Plaintiff called Defendant back. (PSUMF ¶ 78).  During the call, Plaintiff identified herself to the verification agent and was transferred to a collection agent.  (PSUMF ¶ 79).  Upon being transferred to the collection agent, Plaintiff voluntarily handed the phone to her father ("Father") so that he could speak to Defendant on her behalf.  (PSUMF ¶ 80).  Father identified himself to Defendant as "Heather Brown's father."  (PSUMF ¶ 80).  He told the agent that Plaintiff had told Defendant earlier that day that she was unemployed and that her husband recently went to jail.  Father stated that no matter how many times Defendant called, Plaintiff would not be able to make payment and that they were harassing her and needed to stop calling.  (Pl. Dep. 53-55).  The collection agent told Father that she could not take the order to stop calling from him, and then the call ended. (Pl. Dep. at 55).  No further calls were placed to Plaintiff.  (PSUMF ¶ 86).

AO 72A
(Rev.8/8
2)

In the complaint presently before the Court, Plaintiff asserts four counts against Defendant:   three counts under the FDCPA and one count under the TCPA. [Doc. 37 at 7-9].  In Count One, Plaintiff claims that Defendant violated the portion of the FDCPA codified at 15 U.S.C. § 1692c(a)(1) by calling her at times known to be inconvenient to her, [*id.* ¶¶ 67-70]; in Count Two, Plaintiff claims that Defendant violated the portion of the FDCPA codified at 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse her in connection with the collection of a debt, [*id.* ¶¶ 71-75]; in Count Three, Plaintiff claims that Defendant violated the portion of the FDCPA codified at 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt, [*id.* ¶¶ 76-85]; and in Count Four, Plaintiff claims that Defendant violated the portion of the TCPA codified at 47 U.S.C. § 227(b)(1)(A) by calling her cellular telephone using an automatic telephone dialing system—namely, a predictive dialer—without express consent for non-emergency purposes, [*id.* ¶¶ 12-15, 86-90].  She seeks actual damages, statutory damages, costs, and attorneys' fees under 15 U.S.C. § 1692k; a permanent injunction prohibiting Defendant from placing further telephone calls to her cellular telephone number pursuant to 47 U.S.C. § 227(b)(3); and statutory damages pursuant to 47 U.S.C. § 227(b)(3).  [*Id.* at 10].

6

Following the close of discovery, on February 20, 2015, Defendant filed a Motion for Summary Judgment seeking judgment in its favor on all of Plaintiff's claims, [Doc. 39], and on February 23, 2015, Plaintiff filed a Motion for Summary Judgment seeking judgment in her favor on all of her claims, [Docs. 44, 59].  The parties both filed response briefs, [Docs. 56, 60], and reply briefs, [Doc. 61, 62].  With briefing concluded, the Court now considers the merits of the motions.

## II.    *Summary Judgment Standard*

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party may also meet its burden by pointing out that there is an absence of evidence to support an element of the case on which the nonmoving party bears the burden of proof.  *Celotex*, 477 U.S. at 325.  "Only when that burden has been met does

7

the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995). "If the

8

record presents disputed issues of material fact, the Court may not decide them; rather, it must deny the motion and proceed to trial." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).  In essence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III.   *FDCPA Claims*

The FDCPA was enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors.  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam) (citing 15 U.S.C. § 1692(e)); *see also* 15 U.S.C. § 1692e (prohibiting "[f]alse or misleading representations").  The statute also protects reputable debt collectors from unfair competition and encourages consistent state action to protect consumers from abuses in debt collection.  *LeBlanc*, 601 F.3d at 1190.  To prevail on an FDCPA claim, a plaintiff must establish that

> (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (Thrash, J., adopting Baverman, M.J.) (punctuation omitted).

There is no dispute that Plaintiff was the object of collection activity arising from a consumer debt and that Defendant qualifies as a "debt collector." [*See* Doc. 39-2; Doc. 60; Doc. 62]. Defendant does contest, however, Plaintiff's allegations that it engaged in acts prohibited under the FDCPA. The Court addresses the claims in the order in which they were alleged in the complaint.

### A.   *Calls During Known Inconvenient Times (15 U.S.C. § 1692c(a)(1))*

In Count One, Plaintiff alleges that Defendant violated § 1692c(a)(1) by placing telephone calls to her at times known by Defendant to be inconvenient. [Doc. 37 ¶¶ 68-70]. She contends that Defendant is liable to her because it continued to place calls to her despite her communications to Defendant that the calls were "inconvenient, regardless of the time of day." [*Id.*].

Section 1692c(a)(1) states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating

10

with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location[.]

15 U.S.C. § 1692c(a)(1).

Defendant argues that it did not communicate with Plaintiff at an unusual time or place or at a time or place it knew or should have known was inconvenient to Plaintiff, and it contends that it is therefore entitled to summary judgment on the claim. [Doc. 39-2 at 15-19]. Defendant points out that it is undisputed that it placed its calls to the number Plaintiff supplied to Comcast when she signed up for the cable account that was the subject of the collection activity, (DSUMF ¶¶ 3, 7, 9); that Plaintiff did not receive any calls from Defendant before 8:00 a.m. or after 9:00 p.m., (DSUMF ¶¶ 14, 16); and that Plaintiff never expressly told Defendant that the calls were inconvenient or that she wanted it to stop placing telephone calls to her, (DSUMF ¶ 18); and it argues that Plaintiff cannot otherwise show that it called her at an unusual time or place or at a time or place it knew or should have known was inconvenient. [Doc. 39-2 at 15-19].

Plaintiff, in response, states that while she believes that her statements to Defendant should have put Defendant on notice that she felt all continued calls were inconvenient to her, she "is not opposing [Defendant's] motion for summary judgment

11

as to Count One in this case." [Doc. 56 at 2].  Accordingly, the undersigned finds that Plaintiff has conceded or otherwise abandoned the claim she alleged under § 1692c(a)(1) of the FDCPA in Count One.  *See Allied Holding v. Allied Holdings, Inc.*, 1:07-cv-01455-WSD, 2007 U.S. Dist. LEXIS 69296, at *17 (N.D. Ga. Sept. 19, 2007) (Duffey, J.) ("A party's failure to respond to a dispositive argument regarding a claim constitutes an abandonment of that claim."); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (Hunt, J.) (deeming a claim abandoned where the plaintiff failed to respond to the defendant's motion for summary judgment on the claim).

The undersigned therefore **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment as to Count One, [Doc. 39], and **DENY** Plaintiff's motion as to Count One, [Doc. 44].

### B.    *Harassing, Oppressive, or Abusive Conduct (15 U.S.C. § 1692d)*

In Count Two, Plaintiff contends that Defendant violated § 1692d of the FDCPA, alleging that by placing four telephone calls to Plaintiff on May 30, 2014, Defendant engaged in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.  [Doc. 37 ¶¶ 68-70].

The FDCPA forbids debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the

collection of a debt." 15 U.S.C. § 1692d. A debt collector is specifically prohibited from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* ¶ 1692d(5). "Courts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.' " *Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (quoting *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004); *Joseph v. J.J. MacIntyre Cos.*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002)). Also, "[i]ntent may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt, or during a time of day which the debtor had informed the debt collector was inconvenient." *Brandt*, 2010 WL 582051 at *2 (citing *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008)). Claims raised under § 1692d are "viewed from the perspective of a consumer whose circumstances make[] [her] relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985).

13

Notably, Plaintiff presents only one case in which a court appears to have granted a plaintiff's motion for summary judgment. [*See* Doc. 44-2 at 7 & Doc. 56 at 7 (citing *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1452-53 (D. Nev. 1994))]. That case, however, involved a series of six calls placed to the plaintiff's place of employment within a twenty-four minute period, with two of the calls taking place after the plaintiff had spoken with a collector and hung up on him. *Kuhn*, 865 F. Supp. at 1452-53. Here, in contrast, Defendant made only four calls in one day, all spaced more than two hours apart, and placed them to the personal telephone number Plaintiff had provided when opening the defaulted account and not to any place of employment. (DSUMF ¶¶ 3, 5, 8, 9, 14). Consequently, the undersigned is not persuaded that Plaintiff's authority provides grounds for concluding as a matter of law that Defendant's less egregious conduct was harassing, oppressing, or abusive.

Nevertheless, the undersigned is also unconvinced that Defendant is entitled to summary judgment. While a claim raised under § 1692d may be resolved as a matter of law under appropriate circumstances, "[o]rdinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter*, 760 F.2d at 1179. Review of the myriad cases the parties have proffered as persuasive authority indicates that courts disagree as to the number or pattern of calls sufficient to raise a triable issue of

14

fact regarding the intent to annoy, harass, or oppress.  Indeed, as Defendant points out, some courts have found that, without more, four calls in a given day did not indicate an intent to harass.  *See Miller v. Prompt Recovery Servs.*, Case No. 5:11CV2292, 2013 U.S. Dist. LEXIS 88203, at *12-16 (N.D. Ohio June 24, 2013); *Waite v. Fin. Recovery Servs.*, Case No. 8:09-cv-02336-T-33AEP, 2010 U.S. Dist. LEXIS 133438, at *14-15 (M.D. Fla. Dec. 16, 2010); *cf. Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1303 (M.D. Fla. 2010) (granting defendant's motion for summary judgment despite the fact that the defendant made a total of fifty-seven calls and up to seven calls per day, because defendant never called back the same day after leaving a voice message, it did not appear that plaintiff ever spoke to defendant, and plaintiff knew he was not responsible for the debt).   However, under certain circumstances, courts have found that even a minimal number of calls was sufficient to support the consumer's harassment claim.  *See, e.g., Smith v. ProCollect, Inc.*, Case No. 6:09-CV-0350, 2011 U.S. Dist. LEXIS 39700, at *15-16 (E.D. Tex. Apr. 12, 2011) (finding that records showing four calls on one day and no more than two calls on any other day, along with the plaintiff's affidavit stating she received as many as six calls in a day, were sufficient to defeat the defendant's motion for summary judgment); *Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864, 873 (D.N.D. 1981) (concluding

15

that a single phone call made immediately after the consumer hung up on the debt collector was harassment).

In deciding Defendant's motion for summary judgment, the Court must view the facts in the light most favorable to Plaintiff.  From that point of view, the four calls Defendant made to Plaintiff in one day are made more egregious by certain other circumstances:  Defendant made three of the calls after it had already identified itself to Plaintiff and told her of the collection action, (PSUMF ¶ 51; DSUMF ¶ 14); Defendant made two of the calls after Plaintiff had already hung up on Defendant twice, (Wilson Dep., Exh. 9 [Doc. 55-11 at 11]; DSUMF ¶ 14); Defendant made one of those calls after Plaintiff had called to state that she was unemployed and could not make payment that day but would contact Defendant when she figured out a way to pay, told the representative that her husband was in jail, stated that she felt harassed, and hung up on Defendant a third time, (PSUMF ¶¶ 67-70, 76); a collector told Plaintiff's father that she could not take the "no call" direction from him, thereby suggesting that the calls would continue, (PSUMF ¶ 84); and, at any point, Defendant could have engaged a manager to immediately suppress all further calls to Plaintiff but chose not to do so, (PSUMF ¶ 56).  On these facts, a reasonable jury could find Defendant knew or should have known that its continued calls would be annoying, abusive, or harassing.

16

Thus, the undersigned finds that the evidence presented in this case is not so one-sided as to allow for a determination that one party or the other is entitled to judgment as a matter of law. Rather, the evidence here is sufficient to allow a reasonable jury to find in favor of either Plaintiff or Defendant. For these reasons, the undersigned **RECOMMENDS** to the District Judge that he **DENY** both parties' motions for summary judgment on the claim Plaintiff raises in Count Two under 15 U.S.C. § 1692d.

### C.    *Unconscionable Means (15 U.S.C. § 1692f)*

Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The section lists eight non-exhaustive examples of conduct that is "unfair or unconscionable,"[4] and allows a court to " 'sanction improper conduct that the FDCPA fails to address specifically.' " *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001) (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996); *Sparks v. Phillips & Cohen Assocs., Ltd.*, Civ. Action No. 07-0477-WS-C, 2008 WL 2540679, at *10

---

[4]    The examples of "unfair or unconscionable" conduct include: collecting an amount greater than that owed; taking certain actions in connection with a debtor's postdated check; causing charges for communications to be billed to the consumer; taking or threatening to take any nonjudicial action to effect dispossession or disablement of property under certain circumstances; communicating with a consumer regarding a debt by postcard; and using language other than the debt collector's address on envelopes sent to the debtor. 15 U.S.C. § 1692f.

17

(S.D. Ala. June 20, 2008) (same)).  In other words, § 1692f serves a backstop function, catching those "unfair practices" which somehow manage to slip by the reach of the FDCPA's enumerated prohibitions.  *Taylor v. Williams*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) (Thrash, J.) (Section 1692f "may provide a cause of action for conduct that is not specifically listed in that section or any other provision of the FDCPA."); *Masuda v. Thomas Richards & Co*, 759 F. Supp. 1456, 1461 n.10 (C.D. Cal. 1991) (noting that in passing this section of the FDCPA, Congress employed general language to " 'enable the courts, where appropriate, to proscribe . . . improper conduct which is not specifically addressed' ") (quoting S. Rep. No. 95-832, 95th Cong., 1st Sess. 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698).  However, a claim raised under § 1692f fails as a matter of law where the claim fails to identify any misconduct beyond that which Plaintiff asserts violates other provisions of the FDCPA.  *Austin v. Frederick J. Hanna & Assocs., P.C.*, Civ. Action File No. 1:14-CV-00561-SCJ-JFK, 2014 U.S. Dist. LEXIS 138436, at *26-27 (N.D. Ga. July 10, 2014) (King, M.J.), *adopted at* 2014 U.S. Dist. LEXIS 177821 (N.D. Ga. Dec. 23, 2014) (Jones, J.); *Taylor*, 510 F. Supp. 2d at 1217.

Here, Plaintiff does not identify conduct that violates only § 1692f.  Instead, she contends that the conduct that allegedly violated § 1692d—the multiple telephone calls

18

Defendant made to her even after she stated that she felt harassed and the statement to her father that Defendant could not take his direction to cease calling—"*also* constituted unfair and unconscionable means of collecting a debt in violation of 15 U.S.C. § 1692f." [Doc. 44-2 at 12 (emphasis added)].  She does not state how the conduct was "unfair" or "unconscionable" aside from the allegedly harassing, oppressive, or abusive nature proscribed under § 1692d, yet she avers that "the jury should also have an opportunity to decide whether there was something 'unfair' about [Defendant's] collection efforts as well." [Doc. 56 at 15].  Lacking any argument to the Court that the conduct was "unfair" or "unconscionable" other than within the context of § 1692d, Plaintiff's briefs provide the Court with no grounds to find that a reasonable jury could nevertheless make such a determination.  Thus, the undersigned concludes that Plaintiff's failure to identify how the calls were unfair and unconscionable warrants dismissal of this claim.

For these reasons, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment as to Count Three, [Doc. 39], and **DENY** Plaintiff's motion as to Count Three, [Doc. 44].

19

#### IV.    Telephone Consumer Protection Act

In Count Four, Plaintiff claims that Defendant violated the portion of the TCPA codified at 47 U.S.C. § 227(b)(1)(A) by calling her cellular telephone using a predictive dialer without express consent for non-emergency purposes. [Doc. 37 ¶¶ 12-15, 86-90].

The TCPA was "[e]nacted in an effort to address telephone marketing calls and practices." *Meadows v. Franklin Collection Serv., Inc.*, No. 7:09-cv-605, 2010 WL 2605048, at *6 (N.D. Ala. June 25, 2010), *rev'd, in part, on other grounds*, 414 Fed. Appx. 230 (11th Cir. Feb. 11, 2011) (per curiam).  As part of this regulation of marketing calls, the TCPA makes it unlawful, *inter alia*, for an entity "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, . . . or any service for which the party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

A plaintiff states a claim under the TCPA for calls made to a cellular phone by showing that: "(1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient." *Pugliese v. Prof'l Recovery Serv., Inc.*,

No. 09-cv-12262, 2010 WL 2632562, at *7 (E.D. Mich. June 29, 2010) (citing 47 U.S.C. § 227(b)(1)(A)).   Here, there is no dispute that Defendant placed its collection calls to Plaintiff's cellular telephone, (DSUMF ¶ 9), and Plaintiff does not dispute Defendant's assertion that Plaintiff provided "express consent" to Comcast to be called on her cellular telephone, which consent was transferrable to Defendant, [Doc. 56 at 3, ¶ 2(a)].   Defendant contends, however, that Plaintiff has failed to establish that Defendant placed any telephone calls to her using an automatic telephone dialing system within the context of the TCPA, [Doc. 39-2 at 14], and Plaintiff argues that she revoked her consent to be called via automatic telephone dialing system on her cellular telephone, [Doc. 56 at 3-4, § 2(b)].

### A.      *Automatic Dialing System*

Defendant's argument regarding the automatic telephone dialing system is twofold: first, it argues that its equipment does not meet the definition of an automatic telephone dialing system as defined by the TCPA, and second, it contends that Plaintiff cannot establish that Defendant placed its telephone calls to her using such a system. [Doc. 39-2 at 14].   The undersigned is not persuaded by either contention.

First, the evidence does appear to establish that Defendant's equipment meets the TCPA's definition of an automatic telephone dialing system.   An "automatic telephone

21

dialing system" is defined in the statute as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

In support of its argument that its equipment does not meet the TCPA's definition, Defendant proffers an unpublished summary judgment decision issued by an out-of-district state trial court, wherein the court found, based on a uncontroverted declaration apparently submitted by the Rule 30(b)(6) witness in this case, that Defendant's calling technology does not have a number generator.  [Doc. 39-2 at 14 & n.64 (citing *Stockwell v. Credit Mgmt., L.P.*, Case No. 30-2012-00596110-CU-NP-CXC, at *4 (Cal. Super. Ct. Oct. 3, 2013) [Doc. 39-3])].  Defendant has not presented a statement of material fact regarding the number-generating capabilities of the equipment at issue in this case, nor does it appear that any evidence that might support such a statement has been entered into the record.   [*See* Doc. 39-1, *passim*]. Consequently, the undersigned finds no factual basis for a finding in this case that Defendant's equipment lacks a number generator and therefore does not qualify as an automatic telephone dialing system within the context of the TCPA.

Moreover, as Plaintiff points out, the Federal Communications Commission ("FCC") has expressly determined that a "predictive dialer," defined as "equipment that

AO 72A
(Rev.8/8
2)

dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls . . . [and] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*," constitutes an automated telephone dialing system for the purposes of the TCPA, reasoning that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-93 (2003) (emphasis added); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008) (noting that in 2003, the FCC "found that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress").  It is undisputed that Defendant's telephone system has predictive dialer capabilities, specifically, that its telephone system "has the ability to predict when there's going to be an agent available to take a call and so a call is made based on the available agents to take a respond to those calls."  (PSUMF ¶¶ 24-26).  Consequently, the undersigned finds that there is

23

evidence to support Plaintiff's allegation that Defendant used an automatic telephone dialing system in its collection efforts.

Second, viewing the evidence in the light most favorable to Plaintiff, it appears that there is evidence sufficient to enable a reasonable jury to determine that Defendant placed the calls to Plaintiff using a predictive dialer. It is undisputed that Defendant places calls to consumers in two ways: manually and through the use of a "dialer." (PSUMF ¶ 20). Defendant's employees place manual calls by identifying a number on a computer screen and then hitting a button that will cause the computer to dial the telephone number. (PSUMF ¶ 23). "Dialer" calls, in contrast, are placed by Defendant's telephone system, using Interactive Intelligence software, which has predictive dialer capabilities, or in other words, automatically makes calls at the time an agent is predicted to be available to take it. (PSUMF ¶¶ 24-26; Wilson Dep. at 26-27, 30). The calls to and from Plaintiff were captured in the "dialer system," (Wilson Dep. at 60 & Exh. 9), and notations to suppress the "dialer" were entered multiple times in Plaintiff's account notes, (Wilson Dep. at 13, 34-60 & Exh. 7). Thus, while there does not appear to definitive evidence that Defendant used a predictive dialer to place its calls to Plaintiff, there is certainly enough evidence for a reasonable jury to find for Plaintiff on the issue.

24

**B.     Consent**

Whether Plaintiff's TCPA claim can withstand Defendant's summary judgment therefore turns on whether she has proffered evidence sufficient to enable a reasonable jury to find that she withdrew her consent to be contacted on her cellular telephone. [Doc. 56 at 3-4, ¶ 2(b)].  The Eleventh Circuit has considered revocation of consent within the context of the TCPA and determined that "Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2914) (holding that even where a consumer has given her consent to be called on her cellular telephone, she may orally revoke that consent such that continued calls to her cellular telephone using an automatic telephone dialing system will violate the TCPA).[5]  The common-law

---

[5]     Plaintiff appears to urge the Court to introduce the FDCPA's "cease calling" and "harassment" provisions onto the TCPA consent analysis. [*See* Doc. 56 at 21-25].  As the FDCPA's "cease calling" provision requires written notification that the consumer refuses to pay the debt or that the consumer wishes the debt collector to cease further communication with the consumer, 15 U.S.C. § 1692c(c), and it is undisputed that Plaintiff never informed Defendant in writing that she disputed the account or wished Defendant to cease further communications, (DSUMF ¶ 23), it is unclear what benefit Plaintiff believes she would derive from such a construction. Moreover, the Eleventh Circuit Court of Appeals has made clear that the TCPA and FDCPA are "separate statute[s] with . . . independent cause[s] of action for violations," and are not to be conflated.  *Osorio*, 746 F.3d at 1255.  Thus, the Court concludes that it would also be inappropriate to determine that simply because the plaintiff has introduced evidence sufficient to support a harassment claim under the FDCPA, she has

understanding is that "consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." Restatement (Second) of Torts § 892A cmt. i.  The unwillingness "may be manifested to the actor by any words or conduct inconsistent with continued consent."  *Id*.

Here, the facts are too mixed to require a finding that Plaintiff revoked her consent.  Particularly concerning is the fact that Plaintiff had four contacts with collections agents—three of which she initiated herself—and she never told Defendant to stop making automated calls to her cellular telephone number or even directly stated that she wanted Defendant to stop placing automated telephone calls to her. (*See* DSUMF ¶ 18).  Nevertheless, it is clear that Defendant's continued calls were not welcome:  Plaintiff hung up on Defendant multiple times and told its collection agent that she did not have any income, that her husband was "locked up," that she felt harassed, that she would make a payment when she could, and that she would call back to make arrangements.  (*See* PSUMF ¶¶ 67-70).  Moreover, the undersigned notes, as many other courts have, that because the TCPA is a consumer protection statute that is remedial in nature and passed in order to protect consumers from receiving unwanted

_____

likewise proffered evidence sufficient to support a finding that she revoked her consent to be contacted at her cellular telephone number within the context of the TCPA.

26

and intrusive calls, it should be construed liberally in favor of consumers. *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 267-68, 270-71 (3d Cir. 2013); (written request to stop calling number was sufficient to show revocation of consent with regard to a TCPA claim despite consumer's failure to identify the number as a cellular telephone number); *Buchholz v. Valarity*, LLC, No. 4:13CV362 TIA, 2014 WL 5849434, at *2, 7 (E.D. Mo. Nov. 12, 2014) (oral request to "stop calling" sufficient to plead revocation of consent in the context of the TCPA); *Legg v. Voice Media Group, Inc*., 990 F. Supp. 2d 1351, 1354-55 (S.D. Fla. 2014) (finding that consumer's text message to "STOP ALL" was sufficient to plead revocation of consent); *Munro v. King Broad. Co.*, No. C13-1308JLR, 2013 WL 6185233, at *1, 3-4 (W.D. Wash. Nov. 26, 2013) (evidence of having texted "STOP" was sufficient to overcome the defendant's motion for summary judgment regarding revocation of consent); *cf.* 137 Cong. Rec. 30,8221 (1991) (statement of Sen. Ernest "Fritz" Hollings) (describing computerized calls as "the scourge of modern civilization" that "hound us until we want to rip the telephone right out of the wall"). Thus, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could certainly find that Defendant had reason to know that Plaintiff was no longer willing to accept its automated calls to her cellular telephone.

27

The undersigned therefore concludes that a genuine issue of material fact remains as to whether Defendant used an automatic telephone dialing system to place collection calls to Plaintiff and whether Plaintiff revoked her consent to receive automated telephone calls from Defendant to her cellular telephone.  For these reasons, the undersigned **RECOMMENDS** to the District Judge that he **DENY** both parties' motions for summary judgment on the claim Plaintiff raises in Count Four under the TCPA.

## V.     *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** to the District Judge that Defendant's motion for summary judgment, [Doc. 39], be **GRANTED** as to Counts One and Three and **DENIED** as to Counts Two and Four, and that Plaintiff's motion for summary judgment, [Doc. 44], be **DENIED**.  Because this case presents no other issues referred to Magistrate Judges pursuant to Standing Order 14-01, the Clerk is hereby **DIRECTED** to **TERMINATE** reference to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED,** this the 18th day of May, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)